### 7389

### TABER v. SEABOARD AIR LINE RY.

1. RES JUDICATA.—Where this Court on an appeal under rule 27 of this Court has held a plaintiff is not entitled to punitive damages, it is proper for trial Judge on another trial to so instruct jury, especially so where the evidence is practically the same on both trials.

2. CARRIER—PASSENGER—SCHEDULE—ISSUES.—Under the evidence in this case it was error to grant nonsuit as to actual damages, but the issue of actual damage to a passenger from the negligent failure of the carrier to make advertised schedules should have been sent to jury.

3. IBID.—IBID.—PULLMAN COMPANY.—A railroad carrier is liable for the acts of a Pullman employee, affecting the safe and comfortable transportation of a pasesnger under his contract with the carrier.

Before Gage, J., Richland.   October, 1909.   Reversed.

Action by Louisa B. Taber against Seaboard Air Line Ry. From order of nonsuit, plaintiff appeals.

*Messrs. Frank G. Tompkins* and *Edgar H. Thomson,* for appellant, cite: *Former decision does not relieve carrier of liability for acts of pullman porter:* 159 Fed., 387; 65 S. C., 275; 65 S. C., 283; 80 S. C., 133; 2 Fetter on Car., 943; 20 L. R. A., 819; 102 U. S., 451; 32 Am. R., 325; 8 R. A., 224; 91 S. W., 845. *Passenger has the right to rely on representations as to schedules:* 89 S. W., 746; 61 L. R. A., 122; 75 S. C., 144; 53 S. C., 213. *Nonsuit as to negligence:* 69 S. C., 539; 81 S. C., 111, 323.

*Messrs. Lyles & Lyles* and *E. L. Craig,* contra: *Former judgment is operative under rule 27:* 77 S. C., 467; 81 S. C., 317. *Its judgment also res judicata:* 52 S. C., 166; 65 S. C., 410; 37 S. C., 150; 74 S. C., 236; 64 S. C., 242; 63 S. C., 537; 58 S. C., 488; 17 S. C., 163; 54 S. C., 109; 21 S. C., 501; 16 S. C., 621; 6 S. C., 278; 5 S. C., 335; 44 S. C., 20; 94 U. S., 351.

November 26, 1909. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This is an appeal from a judgment of nonsuit.

The nature of the action and the general facts will fully appear by reference to the decision on the former appeal, 81 S. C., 317. In that appeal, the Court reversed the judgment of the Circuit Court in favor of plaintiff, on the ground that there was no evidence of any wilful breach of duty by defendant, and therefore, the Court erred in not granting defendant's motion for nonsuit as to punitive damages, and in refusing to direct jury not to award such damages.

On the second trial Judge Gage, while admitting the testimony offered by plaintiff, ruled that he would instruct the jury not to award punitive damages, because of the decision in the former appeal.

This was proper under rule 27 of this Court, which provides: "Whenever an appeal to this Court is sustained on the ground that a nonsuit should have been granted or a verdict directed because of a total failure of evidence, or because the evidence should admit of but one inference, the reversal of the judgment shall have the same effect as if the nonsuit had been ordered, or a verdict returned under the direction of the Circuit Judge." This rule was adopted December 19, 1906. The action was commenced in February, 1907, was first tried in December 1907, the former appeal was decided September 11, 1908, and the second trial had October 5, 1908, previous to the amendment of the rule adopted December 12, 1908, adding these words:

"Provided that this rule shall not be applicable when the cause of action was not barred by the statute of limitations at the time said orders were refused on circuit, but would be barred at the time they were reversed by the Supreme Court." The case is not affected by this amend-

ment in any event, as the cause of action arose April 16, 1906. .

But even if the rule were inapplicable there was no error, as testimony introduced, and proposed to be introduced, was not substantially different from the testimony on the former trial, which this Court held did not tend to show any wilful breach of duty.

We think, however, that the Court erred in granting a nonsuit as to the cause of action based on negligence.

This matter was also considered in the former appeal, and the conclusion reached was that there was some evidence of negligence resulting in some actual damage to plaintiff, and that there was no error in refusing nonsuit as to the cause of action for negligence.

Except in one or two particulars not controlling, the testimony was substantially the same as in the former trial, and the Court held that this case was one to be submitted to the jury.

On the former appeal the Court considered that there was testimony that if the conductor had given plaintiff the information, she could have made immediate connection at Norlina with a train to Portsmouth, as such a train left shortly after arrival of her train at Norlina.

This matter was fully cleared up by the testimony in the second trial. The train to Portsmouth left Norlina before the arrival of the train bearing plaintiff, which was two hours late, and hence the connection at Norlina was not made until after a delay of eight or ten hours.

We are not influenced by the suggestion that plaintiff, if informed, might have gone on to Petersburg and then taken the Norfolk & Western Line to Portsmouth, as defendant had no connection with Portsmouth by way of Petersburg, and there was no evidence that plaintiff could have reached Portsmouth sooner by way of Petersburg, and no evidence that she would have attempted such longer route for which she had no ticket.

It also clearly appears by plaintiff's testimony that she incurred no expense by reason of delay at Norlina, as, excepting the delay itself, she had every reasonable attention extended to her at Norlina, and no complaint is made of any improper treatment during the final transportation from Norlina to Portsmouth.

The former decision eliminates from the case all question as to punitive damages; and all question as to damages claimed.for mere worry or mental anxiety, or mental suffering, disconnected from bodily injury, for which the common law as administered in this State affords no redress.

There was some testimony that the delay in transportation helped to make plaintiff sick, and to cause a nervous breakdown. In the former opinion the Court held that if there was a nervous breakdown as the direct result of defendant's negligence, for such bodily suffering there should be compensation. Moreover, it is not disputed that plaintiff lost eight or ten hours of time, and for which there should be some compensation, if defendant's negligence caused such loss of time.

Furthermore, it appears that plaintiff expended $2.50 for Pullman service from Hamlet to Norlina, which expenditure in whole or in part may not have been necessary if plaintiff had been informed at Hamlet, as she should have been, that her proper course, in view of the failure of connection was to stay over at Hamlet, rest, wait for the next connection, No. 38, the same train, she took at Norlina. Plaintiff's case depends upon the question whether there was negligence on the part of the defendant in making the schedule connection at Hamlet or Norlina.

Ordinarily train 84, upon which plaintiff left Columbia, connected at Hamlet with train 32, then these trains consolidated and ran as 84 to Norlina, where the consolidated train split, 84 going on to Richmond, and 32 going to Portsmouth, according to the testimony for defendant, 84 reached Hamlet about one hour and a half late, having

three coaches in train more than usual, having been delayed
thirty-eight minutes at Columbia, 20 minutes because Jump-
ing Gully trestle was on fire, 9 minutes at Camden handling
an unusual amount of baggage, and 21 minutes because the
engine failed to steam well on account of bad coal.  Because
of this delay and the further fact that 84 and 32 jointly
had an equipment too heavy for one engine to pull, 32
passed Hamlet without consolidating with 84, and went on
to Portsmouth, making it impossible for plaintiff to reach
Portsmouth over defendant's line until 38 came along next
day.  As declared in the former appeal: "Mere representa-
tions as to schedules and connections are not to be considered
as guarantees, still it is ordinarily the duty of the carrier
to run its trains on schedule time, and make the usual
advertised connections, and it is liable for any injury directly
resulting from any negligent failure to make such schedule
and connections."

The Court further declared: "When it is shown that the
carrier has failed to make its schedule and connections,
and this results in an injury to a passenger, a presumption
of negligence arises and the burden is cast upon the carrier
to show that such failure was not due to its negligence,
*Miller* v. *Southern Ry.*, 69 S. C., 135."  The Court referred
to the explanation given of the delay, and declared that
such explanation did not conclusively rebut the presump-
tion of negligence, and we must again so hold, as the explan-
ation is substantially the same as in the former trial.

The thirty-eight minutes' delay in Columbia, the fact that
a trestle should be allowed to be on fire, the use of bad coal,
were not so conclusively explained as to authorize the Court
to declare as matter of law that there was no negligence in
any of these matters affecting the operation of the train,
and causing delay.  *Mulligan* v. *Southern Ry., ante,* 171.

It seems that on the trial the Court and counsel miscon-
ceived the meaning of the opinion of the Court on the

former appeal in the language used in considering whether the failure of the Pullman porter to make up plaintiff's berth was a breach of the defendant's duty as carrier. · This Court said: "Conceding that the porter was negligent, or even wilfully disregardful of plaintiff's request *in this matter,* the defendant company is not liable in the absence of evidence connecting it with the special contract of the Pullman Company. The delict, if any, was a breach of duty by the Pullman Company, since it appertained *peculiarly* to the contract of that company to furnish *berth* accommodations as *distinguished* from the defendant's contract of *safe and comfortable transportation.*"

As shown in *Campbell* v. *Seaboard Air Line Ry.,* 83 S. C., 452, this is a sound and obvious distinction, but it affords no ground for holding that a railroad carrier is not liable for the acts of Pullman employees affecting the safe and comfortable transportation of a passenger under his contract with the carrier.

We do not deem it important or necessary to consider the exceptions in detail. The foregoing sufficiently disposes of all material questions.

The judgment of the Circuit Court is reversed.