700 S.E.2d 451

**Clarence RUTLAND, as Personal Representative for the Estate of Tiffanie Rutland, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent.**

**No. 4721.**

Court of Appeals of South Carolina.

Heard May 18, 2010.

Decided Aug. 4, 2010.

Rehearing Denied Oct. 29, 2010.

80

J. Christopher Wilson, of Bamberg; Lee D. Cope, R. Alexander Murdaugh, Matthew V. Creech, of Hampton, for Appellant.

Richard B. Ness and Norma A.T. Jett, of Bamberg, for Respondent.

WILLIAMS, J.

Clarence Rutland (Rutland), as personal representative of the Estate of Tiffanie Rutland, appeals the trial court's decision granting the South Carolina Department of Transportation's (SCDOT) post-trial motion for set-off, which subsequently reduced the verdict against SCDOT to zero. We affirm.

## FACTS

On June 7, 2003, Tiffanie Rutland (the decedent) was a passenger in a 1999 Chevrolet S–10 Blazer (the Blazer) on Highway 301 in Orangeburg County along with her husband, Rutland, her son, and Rutland's aunt. Rutland's uncle, Joseph Bishop (Bishop), was driving the Blazer. While traveling on Highway 301, Bishop encountered a heavy rain storm and reduced his speed to approximately 45–50 miles per hour. However, Bishop subsequently lost control of the Blazer when it hydroplaned. The Blazer overturned in a nearby ditch. The decedent sustained fatal injuries after she was partially ejected from the Blazer's side window.

Rutland received a $30,000 settlement from Bishop's automobile insurance policy. On February 2, 2005, Rutland filed a wrongful death action against SCDOT. On May 8, 2006,

Rutland amended his complaint and added REA Construction Company[1] and General Motors (GM) as defendants to the wrongful death action.

Prior to the trial against SCDOT, GM and Rutland reached a settlement agreement. The settlement agreement totaled $275,000, of which GM agreed to allocate $137,500 to the wrongful death claim and $137,500 to the survival claim. The trial court approved the settlement agreement (the settlement trial court) on August 9, 2007, and allocated $167,000 ($29,500 from Bishop's automobile policy and $137,500 from the GM settlement) to the wrongful death claim and $138,000 to a survival claim.[2] The Bishop and GM settlements totaled $305,000.

In the trial against SCDOT, the jury awarded Rutland a $300,000 verdict in actual damages for the decedent's wrongful death. SCDOT subsequently filed a motion to set-off the proceeds of the Bishop and GM settlements. Rutland filed a motion for a new trial absolute, new trial on damages only, or in the alternative for a new trial *nisi additur*.

The trial court that heard the case against SCDOT (the SCDOT trial court) issued an order approving SCDOT's motion for set-off, reduced the verdict against SCDOT to zero, and denied Rutland's new trial motions. Rutland subsequently filed a motion for reconsideration of the SCDOT's trial court order. In the SCDOT trial court's final order, the trial court denied Rutland's new trial motions and clarified its set-off ruling. The SCDOT trial court concluded the settlement agreement should be reallocated based on the insufficiency of the evidence to support a survival claim. This appeal followed.

## STANDARD OF REVIEW

The trial court's jurisdiction to set off one judgment against another is equitable in nature and should be exercised

---

1. REA Construction Company was voluntarily dismissed prior to trial.

2. The settlement trial court's order states, "Petitioner did not allege a survival action. Nevertheless, the Petitioner's settlement with [GM] includes settlement of all alleged and unalleged claims, including Petitioner's wrongful death claim and any potential survival claim."

when necessary to provide justice between the parties. *Welch v. Epstein*, 342 S.C. 279, 313, 536 S.E.2d 408, 425 (Ct.App. 2000). A set-off is not necessarily founded upon any statute or fixed rule of court but grows out of the inherent equitable jurisdiction of the court. *Rookard v. Atlanta & Charlotte Air Line Ry.*, 89 S.C. 371, 376, 71 S.E. 992, 995 (1911). Therefore, a motion for set-off is addressed to the discretion of the court, and this discretion should not be arbitrarily or capriciously exercised. *Id.*

## LAW/ANALYSIS

### A. Survival Action

█ Rutland contends the SCDOT trial court erred in granting SCDOT's motion for set-off because there is sufficient evidence to support a survival claim.[3] We disagree.

█ The test of a survival action in South Carolina is whether the decedent suffered conscious pain and suffering. *Camp v. Petroleum Carrier Corp.*, 204 S.C. 133, 139, 28 S.E.2d 683, 685 (1944). South Carolina case law provides illustrative examples of when a survival action has evidentiary support of conscious pain and suffering.

In *Ward v. Epting*, 290 S.C. 547, 560, 351 S.E.2d 867, 875 (Ct.App.1986), this court found testimony that the decedent's response to directions in the recovery room following surgery constituted sufficient evidence of conscious pain and suffering to present a factual question to the jury. In contrast, in *Welch v. Epstein*, this court concluded there was only evidence the decedent lapsed into a coma at the time of his arrest and he did not recover from this condition. 342 S.C. at 313, 536 S.E.2d at 426. This court found the survival action was limited solely to medical bills, and *Ward* was distinguishable

---

3. Rutland did not plead a survival claim against SCDOT or any other defendant. However, the settlement trial court concluded the settlement included all alleged and unalleged claims, including Rutland's wrongful death claim and any potential survival claim against GM. Even though Rutland failed to plead a survival action, the elements of a survival action are discussed to analyze whether the trial court properly concluded that there was insufficient evidence to support a survival action in reallocating the proceeds of the survival action to the wrongful death action.

because there was some evidence to support a factual issue of conscious pain and suffering based on Ward's responses to directions. *Id.*

Rutland asserts there was sufficient evidence to support a survival claim because a passerby indicated the decedent had a pulse after the accident. After reviewing the record, we conclude the trial court did not err in granting SCDOT's motion for set-off based on the insufficiency of the evidence to support a survival claim. The record does not reveal any evidence tending to show the decedent endured conscious pain and suffering. In fact, Rutland testified the decedent did not respond when he called her name, the decedent did not make any noises, he knew she was dead immediately after the accident, and he knew the decedent died even though he was told that the decedent had a pulse. Therefore, the SCDOT trial court did not err in concluding that there was not sufficient evidence from which a jury could have concluded the decedent experienced conscious pain and suffering.

## B. "Pre–Impact Fear"

Rutland argues the decedent experienced "pre-impact fear" and suffered mental trauma because of her knowledge of her impending death. Rutland contends this "pre-impact fear" is recoverable in a survival action when the decedent suffered mental trauma before actual physical injury resulting in the decedent's death. We disagree.

In support of his position, Rutland cites *Spaugh v. Atlantic Coast Line Railroad. Co.*, 158 S.C. 25, 155 S.E. 145 (1930). *Spaugh* involved a woman who became physically ill after experiencing a nervous breakdown when she was stranded by a train company. *Id.* at 27–29, 155 S.E. at 146–47. The woman "became highly nervous" and "suffered from troubles peculiar to ladies, which condition was brought on her by the exposure and experience she was subjected to." *Id.* at 29–30, 155 S.E. at 147. In affirming the trial court's denial of the defendant's directed verdict motion, our supreme court concluded there was sufficient evidence that the plaintiff suffered bodily injury. *Id.* at 30, 155 S.E. at 147. The court stated,

In order to receive bodily injury, it was not necessary that the plaintiff should lose a limb or receive a broken

limb, or to have wounds inflicted on her body. Having her nervous system injured and being made sick, in the manner she testified, constitutes bodily injury ... provided the proof establishe[d] negligence on the part of the defendant's agent ... and such negligence caused the alleged injury complained of.

*Id.*

Additionally, Rutland cites several cases in which other jurisdictions have recognized a cause of action for "pre-impact fear."

■ South Carolina does not recognize "pre-impact fear" as a compensable cause of action. *See Hoskins v. King*, 676 F.Supp.2d 441, 451 (D.S.C.2009) (concluding South Carolina law does not permit recovery for pre-impact fright). Also, we decline to extend the holding in *Spaugh* for the proposition that "pre-impact fear" is recoverable in this State.

### C. Sufficiency of the Evidence

■ Rutland contends SCDOT is bound by the sufficiency of the evidence in the settlement trial court's order. We disagree.

The settlement trial court's order stated,

The court approves the allocation without making any factual findings about the cause of the crash or the cause of Tiffanie Rutland's death but finds that there exists some evidence, however slight, that Tiffanie Rutland survived the crash and consciously endured pain and suffering prior to her death.

Nonetheless, the order further states,

Nothing herein shall preclude by waiver or otherwise the right of SCDOT to argue against the allocation or apportionment of wrongful death and survival proceeds or findings herein, to which SCDOT does not stipulate at the appropriate later time in the continuing litigation for purposes of set[-]off to which SCDOT may be entitled.

■ Because SCDOT was not a party to the Bishop and GM settlements and the settlement trial court's order expressly granted SCDOT the right not to stipulate to the findings of the order, we conclude SCDOT was not bound by the settle-

ment trial court's sufficiency of the evidence ruling in regard to whether the decedent endured conscious pain and suffering. *McCrea v. City of Georgetown*, 384 S.C. 328, 332, 681 S.E.2d 918, 921 (Ct.App.2009) (stating that a stipulation is an agreement, admission, or concession made in judicial proceedings that are binding upon those who make them). Additionally, the settlement trial court's order as it pertains to the non-binding effect of non-stipulated matters is the law of the case because Rutland never appealed the order. *See ML–Lee Acquisition Fund, LP v. Deloitte & Touche*, 327 S.C. 238, 241, 489 S.E.2d 470, 472 (1997) (holding an unappealed ruling, right or wrong, becomes the law of the case).

### D. Equitable Reallocation

■ Rutland finally contends the trial court erred in equitably reallocating the Bishop and GM settlement proceeds and in applying the full settlement award towards SCDOT's right of set-off. Rutland argues the trial court's reallocation of the settlement proceeds is improper because the settlement agreement is binding and argues the decedent experienced conscious pain and suffering. We disagree.

■ A non-settling defendant is entitled to credit for the amount paid by another defendant who settles. *Smalls v. S.C. Dep't of Educ.*, 339 S.C. 208, 219, 528 S.E.2d 682, 688 (Ct.App. 2000). The trial court's jurisdiction to set-off one judgment against another is equitable in nature and should be exercised when necessary to provide justice between the parties. *Welch*, 342 S.C. at 313, 536 S.E.2d at 425.

In *Ward*, the personal representative settled with a co-defendant for $29,500 for pain and suffering and $500 for wrongful death on behalf of the decedent. 290 S.C. at 559, 351 S.E.2d at 874. The personal representative subsequently went to trial against Dr. Epting, the non-settling defendant, and the jury awarded Ward $400,000 in actual damages for wrongful death. *Id.* at 552, 351 S.E.2d at 870. Dr. Epting moved *in limine* to assign the full amount of the settlement agreement to the wrongful death action and argued the personal representative's settlement with the co-defendant was a de facto settlement of the wrongful death action since there was insufficient evidence to support a survival action. *Id.* at

559, 351 S.E.2d at 874. This court declined to reallocate the proceeds because there was evidence that Ward was responding to directions following surgery; therefore, there was sufficient evidence to present a jury question on conscious pain and suffering. *Id.* at 560, 351 S.E.2d at 875.

In *Welch,* the personal representative settled with a co-defendant for $445,000 for a survival claim and $5,000 for a wrongful death claim. *Welch,* 342 S.C. at 312, 536 S.E.2d at 425. The personal representative asserted a wrongful death and survival action claim against Dr. Epstein, and the jury awarded the personal representative $28,535.88 on the survival claim, $3,000,000 on the wrongful death claim, and $3,900,000 in punitive damages. *Id.* at 287, 536 S.E.2d at 412. Dr. Epstein filed a post-trial motion for set-off based on the reallocation of the settlement proceeds. *Id.* at 312, 536 S.E.2d at 425. The trial court reallocated the proceeds in the amount of $28,535.88 for the survival action and $421,464.12 in the wrongful death action. *Id.* In upholding the trial court's reallocation, this court concluded that the reallocation must "yield to fairness and justice." *Id.* at 313, 536 S.E.2d at 426. This court also distinguished *Ward* on the grounds that the decedent fell into a coma and the pain suffered by the decedent was directly related to the surgery. *Id.* Additionally, the court noted Dr. Epstein was not a party to the settlement and was not bound by the settlement's terms. *Id.*

We conclude the instant case is controlled by *Welch.* The SCDOT trial court concluded, and we agree, the record does not contain any evidence to support a survival action based on conscious pain and suffering suffered by the decedent. Thus, unlike in *Ward,* where there was evidence that existed to prohibit the reallocation of the pain and suffering and wrongful death claims, there is not sufficient evidence to present a jury question that the decedent suffered conscious pain and suffering in the instant case. Moreover, SCDOT was not a party to the settlement agreement, and the settlement trial court's order expressly granted SCDOT the right not to be bound by the settlement agreement. Therefore, we conclude the SCDOT trial court did not abuse its discretion in reallocating the settlement proceeds to the wrongful death verdict against SCDOT.

## CONCLUSION

Accordingly, the trial court's decision is **AFFIRMED.**

HUFF and SHORT, JJ., concur.